**TARKINGTON INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**S. Kay AIKEN and Mark Kenneth Aiken, Appellees.**

No. 09–01–319 CV.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 6, 2001.

Decided Jan. 24, 2002.

---

William M. Buechler, Buechler & Associates, Austin, for appellant.

R.M. Sharpe, Jr., Robert C. Oliver, Sharpe & Oliver, Houston, for appellees.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

Appellees Mark Kenneth Aiken and his mother, S. Kay Aiken (collectively "Aiken"), sued appellant Tarkington Independent School District ("Tarkington I.S.D.") for personal injuries that Mark sustained while riding on the tailgate of a privately-owned pickup truck on school property. Claiming sovereign immunity, the school district filed a plea to the jurisdiction. After the trial court denied the jurisdictional plea, Tarkington I.S.D. filed an interlocutory appeal pursuant to TEX. CIV. PRAC. &

REM.CODE ANN. § 51.014(a)(8), (b) (Vernon Supp.2002).

### BACKGROUND FACTS

The Palacios Independent School District Job Training Program ("Palacios") entered into a Summer Youth Program Work Site Agreement ("Agreement") with Tarkington I.S.D. to "provide meaningful summer work experience for disadvantaged youth...." Under the terms of the Agreement, Palacios was "the employer of any participants working at Work Site Agency [Tarkington I.S.D.] ... and [Palacios] [was] responsible for the payment of wages and applicable taxes." Tarkington I.S.D. was responsible for instructing, supervising, and evaluating the program participants.

The record makes clear the status of the persons involved, and the parties never contend otherwise. In addition to the contract's provisions regarding the status of Palacios as the employer of the program participants and the provider of worker's compensation insurance, each petition filed by the Aikens and their motion for summary judgment also expressly state that Palacios employed the program participants. Tarkington I.S.D. takes the same position. Furthermore, at the hearing on the Plea to the Jurisdiction, the trial judge asked the attorneys why Palacios I.S.D. was not sued, and the Aiken's attorney replied it was "[b]ecause they [Palacios] were the employer and they had worker's comp." The parties do not take the position before the trial court or this court that Mark Aiken was an employee or a borrowed servant of Tarkington I.S.D. The thrust of the pleadings, the evidence, and the arguments is that a Tarkington I.S.D. employee-supervisor, who was not driving the pickup truck, negligently supervised the program participant who was driving the vehicle, and that the Tarkington super-

visors themselves were not properly trained.

According to both Aiken and Tarkington I.S.D., Palacios employed, among others, Mark Aiken, Shawn S., and Ricky S.[1] as program participants. One of their supervisors was Elmer Roberts, a Tarkington I.S.D. employee. On July 22, 1999, Roberts instructed Mark, Shawn, and Ricky to move school desks from one school building to another. After conveying the instructions, Roberts left Aiken and the others to complete the desk-moving task while Roberts went to get a lawn mower out of another building so that he could mow the football field. Before starting to mow, he checked the field house to make sure the program participants had begun the project; he observed them physically carrying one desk from the building. Roberts then proceeded to mow the field; he testified in his deposition that he remained within approximately 75–80 yards of the program participants.

After mowing for a while, Roberts returned to the field house and observed Shawn backing his vehicle up to the field house. Roberts testified he was "fixing to get on [them] about being over there in the truck because they wasn't supposed to be driving the truck, period." Mark was riding on the tailgate of Shawn's pickup and sustained injuries when Shawn backed into the building.

### Plea to the Jurisdiction

■■■ Unless waived, sovereign immunity protects the state, its agencies, and its officials from lawsuits for damages. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). Without the state's express consent to the suit, the trial court lacks subject matter jurisdiction to hear the case. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). Because subject matter jurisdiction is a question of law, we review the jurisdictional challenge *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). In our *de novo* review of the plea to the jurisdiction, we are not required to look solely at the pleadings but may consider evidence in the record, and must do so when necessary, to resolve the jurisdictional issues. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000).

Here, the Aikens filed a "Motion for No Evidence Summary Judgment." Attached to the Aikens' motion are deposition excerpt evidence and the Agreement itself. The trial court did not conduct a hearing or issue a ruling on the Aikens' motion. Shortly after the Aikens filed their summary judgment motion, Tarkington filed its plea to the jurisdiction. In their "Opposition to [Tarkington I.S.D.'s] Pleas to the Jurisdiction and in Abatement," the Aikens expressly "incorporate[d] fully and by reference herein the arguments, authorities and evidence supporting their pending Motion for No Evidence Summary Judgment." By such incorporation, the Aikens presented that evidence for consideration by the trial court. Pursuant to the Aikens' incorporation of evidence and the Texas Supreme Court's holding in *Bland*, our review of the denial of Tarkington's jurisdictional plea encompasses the pleadings and the evidence presented by the Aikens' in response to the jurisdictional plea.

■■■ In this case, Tarkington I.S.D., a governmental unit,[2] is immune from both

---

**1.** Shawn S. and Ricky S. are referred to in the record before this court with an initial for each surname, apparently because they were minors at the time of incident and the filing of suit.

**2.** For purposes of sovereign immunity, school districts, like cities and counties, are political

suit and liability for Mark's injuries unless the Texas Tort Claims Act (the "Act") waives that immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021, 101.025 (Vernon 1997); *see also LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992). In deciding whether Tarkington I.S.D.'s sovereign immunity has been waived, we first consider the scope of the waiver, and then we determine if the case falls within the Act's scope by examining the facts alleged by the plaintiff in his pleadings and the evidence submitted to the trial court—to the extent that the allegations and evidence are relevant to the jurisdictional issue. *See Miller*, 51 S.W.3d at 587 (citing *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). We do not address the merits of the case. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. Instead, the defendant must "establish a reason why the merits of the plaintiffs' claims should never be reached." *Id.* at 554. A plaintiff's "[m]ere reference to the Tort Claims Act does not establish the state's consent to be sued and thus is not enough to confer jurisdiction on the trial court." *See Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001).

## ANALYSIS

Aiken contends the Act waives Tarkington I.S.D.'s sovereign immunity. Sections 101.021 and 101.051 establish the scope of the waiver of a governmental unit's sovereign immunity. We set out those sections in part below:

§ 101.021. Governmental Liability

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). The limited waiver of immunity in section 101.021 is further limited by section 101.051, which applies specifically to school districts.

§ 101.051 School and Junior College Districts Partially Excluded

Except as to motor vehicles, this chapter [Chapter 101 of the Texas Tort Claims Act] does not apply to a school district or to a junior college district.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.051 (Vernon 1997). Immunity is waived against school districts only as to the "use" or "operation" of motor vehicles.

Mark Aiken seeks to bring his claim within the Act by maintaining his injuries were caused by the "use" or "operation" of a motor vehicle. The Texas Supreme Court has stated that "use" means to " 'put or bring into action or service; to employ for or apply to a given purpose' " and "[o]peration" means a " 'doing or performing of a practical work[.]' " *LeLeaux*, 835 S.W.2d at 51 (quoting *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex.1989)) (citations omitted).

subdivisions of the State. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (Vernon Supp. 2002); *San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 283 (Tex.1996).

Here, Tarkington I.S.D., through its employee Roberts, did not bring the privately-owned vehicle into service or action, did not employ it for or apply it to a given purpose, and did not perform a practical work with it. Even so, argues Aiken, sovereign immunity is waived because Roberts, the only supervisor on site, exercised control and direction over the program participants' actions and in that sense "used" or "operated" the vehicle. There is, he argues, no requirement that the employee "physically must have been driving the pickup truck when Mark was injured" or that the governmental entity own the vehicle. In contrast, Tarkington I.S.D. maintains that it is immune from suit under the Act and that the trial court lacked jurisdiction, because (1) the motor vehicle in question was neither owned by the school district nor operated or used by a district employee at the time of the accident, and (2) Aikens' allegations all relate to the direction, control, and supervision of program participants rather than the operation or use of a motor vehicle.

■ As noted above, the Act's waiver of immunity is limited; a school district is not liable for personal injuries proximately caused by a negligent employee unless the injury "arises from the operation or use of a motor-driven vehicle or motor-driven equipment." *LeLeaux*, 835 S.W.2d at 51 (quoting in part section 101.021(1)(A)). The Supreme Court further stated in *LeLeaux* that "[w]hile the statute does not specify whose operation or use is necessary—the employee's, the person who suffers injury, or some third party—we think the more plausible reading is that the required operation or use is that of the employee. This requirement is consistent with the clear intent of the Act that the waiver of sovereign immunity be limited." *LeLeaux*, 835 S.W.2d at 51 (footnote omitted); *see generally Delaney v. University*

*of Houston*, 835 S.W.2d 56, 59 (Tex.1992) (specifically referencing *LeLeaux* and applying similar construction to TEX. CIV. PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1997)).

In a summary judgment case involving operation or use of a privately-owned motor vehicle by a student who was not a school employee, the San Antonio court of appeals held that the immunity of the school district was not waived. *See Heyer v. North East Indep. Sch. Dist.*, 730 S.W.2d 130, 132 (Tex.App.-San Antonio 1987, writ ref'd n.r.e.). There, a student was waiting on school property to board the school bus to go home when a fellow student, who was "power-braking" his car, lost control of the car and struck her. It was undisputed that the school district did not own the vehicle that struck and injured the girl and that no school district employee was operating it. *Id.* at 130–31. Pointing out that the allegations of negligence against the school district "related to the control and supervision of the parking lot, students, and the traffic[,]" and that the vehicle involved "was not owned or operated by any agent of the School District[,]" the court held the suit did not fall within the section 101.051 waiver of immunity. *Id.* at 132. Some five years later, the Texas Supreme Court validated the holding in *Heyer* when it made its pronouncement in *LeLeaux* that the more plausible reading of the statute requires the operation or use of the motor vehicle be by an employee. *See LeLeaux*, 835 S.W.2d at 51–52.

Aiken relies on two cases, *County of Galveston v. Morgan*, 882 S.W.2d 485 (Tex. App.-Houston [14th Dist.] 1994, writ denied), and *City of El Campo v. Rubio*, 980 S.W.2d 943 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.). In both instances, the courts in effect held that by exercising control over a vehicle (not owned by the

government entity or operated by the government employee), the employee used or operated the vehicle. However, given the holding in *LeLeaux* we do not accept the proposition, as espoused by these cases, that a school district necessarily engages in "use" or "operation" of a motor-driven vehicle when it negligently exercises control over non-employees.

Other courts have cited this Court's opinion in *Contreras v. Lufkin Indep. Sch. Dist.*, 810 S.W.2d 23 (Tex.App.-Beaumont 1991, writ denied), as holding that the school district was liable for injuries that resulted from a school bus driver's leaving a student at the wrong bus stop. *See Goston v. Hutchison*, 853 S.W.2d 729, 734 (Tex.App.-Houston [1st Dist.] 1993, no writ); *see also Ransom v. Center for Health Care Servs.*, 2 S.W.3d 643, 645 (Tex.App.-San Antonio 1999, pet. denied). The First Court observed, and the Fourth Court agreed, that the employee's conduct in *Contreras* fell under the category of failure to properly supervise rather than negligent operation or use of a motor vehicle. *Id.* They conclude this Court found such conduct to be within the scope of the waiver of immunity under the Act. However, we read *Contreras* differently and also find it distinguishable from the instant case.

In *Contreras*, a summary judgment case, the school bus driver dropped the six year old girl off at the wrong stop and continued on his route. *Contreras*, 810 S.W.2d at 24. While attempting to make her way home, the child was struck by a car and injured. *Id.* In reviewing the pleadings, this Court observed that the school district's only ground in its summary judgment motion was Contreras's alleged failure to plead that the accident arose out of the operation or use of a motor-driven vehicle. *Id.* at 25. We noted the ground in the motion was completely at odds with

the pleadings, because Contreras's petition expressly pleaded to that effect. *Id.* Because there was no basis for the single ground stated in the motion, we reversed the summary judgment and remanded the case to the trial court. *Id.* at 26. We believe any reading of the opinion should be limited to the specific procedural findings in the case. Any other reading is too expansive. We further note that, in contrast to the instant case, *Contreras* involved a school district vehicle, as well as a school bus driver.

■ Here, Aiken initially pleaded negligent acts and/or omissions relating to improper supervision, direction, and control of non-employees and the improper training of Tarkington I.S.D. employees. After the trial court conducted a hearing on the school district's plea to the jurisdiction, but before the order denying the plea was signed, Aiken filed his first amended petition. There he added language stating that his injuries "ar[ose] from the operation or use of a motor-driven vehicle." However, the allegations of negligent acts and omissions raised in the amended petition and in the original petition all relate to claims of improper supervision, direction, and control of non-employees and improper training of Tarkington employees; there is no evidence in the record that a school district employee was operating or using the vehicle and no evidence that the school district owned the vehicle.

■ When allegations of negligence are related to the direction, control, and supervision of students (or here "program participants") under circumstances such as those described in this case, sovereign immunity bars suit; if, on the other hand, the allegations of negligence are related to the negligent use of the vehicle itself, the suit is not barred. *See Goston*, 853 S.W.2d at 733; *Estate of Garza v. McAllen Indep. Sch. Dist.*, 613 S.W.2d 526, 527 (Tex.Civ.

App.-Beaumont 1981, writ ref'd n.r.e.). Such claims as those reflected by the record herein do not warrant a waiver of sovereign immunity under the Texas Tort Claims Act. *See Naranjo v. Southwest Indep. Sch. Dist.*, 777 S.W.2d 190, 192 (Tex. App.-San Antonio 1989, writ denied); *see also Luna v. Harlingen Consolidated Indep. Sch. Dist.*, 821 S.W.2d 442, 444–45 (Tex.App.-Corpus Christi 1991, writ denied). (Appellants' allegations in a summary judgment case that poor planning and layout of the bus stop caused injuries to children while waiting for the bus did not involve operation or use of a vehicle.).

Appellees would have us read the statute more expansively than *LeLeaux* stated it should be read. We decline to do so until directed otherwise by the Texas legislature or by the Texas Supreme Court. The record before us establishes that Tarkington I.S.D. did not own the vehicle and its employee did not operate or use the vehicle. There is no nexus between Mark Aiken's injuries and an employee's negligent operation or use of the vehicle. We hold that Aiken's complaint does not fall within the scope of the waiver of immunity under the Tort Claims Act. We reverse the trial court's denial of appellant's plea to the jurisdiction and render judgment dismissing the case for lack of jurisdiction.

REVERSED AND RENDERED.

DON BURGESS, Justice, dissenting.

I respectfully dissent. The trial judge correctly denied Tarkington's plea to the jurisdiction because there are legitimate fact issues raised by the plaintiff's pleading that the incident in question falls within the scope of the Texas Tort Claims Act.

As we stated in *Montgomery County v. Fuqua*, 22 S.W.3d 662 (Tex.App.-Beaumont 2000, pet. denied), "[g]overnmental 'immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction.'" 22 S.W.3d at 665 (citing *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999)). And, as our Supreme Court recently explained: "Under [*Texas Dep't of Transp. v.*] *Jones*, we must examine the plaintiff's pleadings to decide whether sovereign immunity has been waived." *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001). Also, in addition to reviewing the facts alleged by the plaintiff, we consider the evidence submitted by the parties "to the extent it is relevant to the jurisdictional issue." *Texas Natural Resource & Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001); *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000)(school district's evidence, which was presented in an evidentiary hearing on plea to jurisdiction and was relevant to the jurisdictional issue, should have been considered by the trial court). However, where, as here, no evidence was presented to the trial court, we look solely to the pleadings to determine the jurisdictional question. *See San Antonio State Hosp. v. Cowan*, 2001 WL 1230610, *2 (Tex.App.-San Antonio 2001).

The boys were, in my view, borrowed servants of Tarkington I.S.D. In *Hoffman v. Trinity Industries, Inc.*, 979 S.W.2d 88, 90 (Tex.App.-Beaumont 1998), this court stated:

Texas courts recognize that the general employee of one employer may become the special employee or "borrowed servant" of another employer. *Sparger v. Worley Hosp. Inc.*, 547 S.W.2d 582, 583 (Tex.1977). The "borrowed servant" doctrine is implicated when the nominal or general employer loans or supplies an employee to another, who is termed the special employer. *Rodriguez v. Martin Landscape Management, Inc.*, 882

S.W.2d 602, 604 (Tex.App.-Houston [1st Dist.] 1994, no writ). The issue of "right of control" is pivotal under the borrowed servant doctrine because the employer who has the right of control is exempted from common law liability. *Esquivel v. Mapelli Meat Packing Co.*, 932 S.W.2d 612, 614 (Tex.App.-San Antonio 1996, writ denied). The test for determining whether a person is the employee of the original employer or of the borrowing employer is whether the employee is subject to the specific direction and control of the loaning or the borrowing employer. *Id.*

Even though the documents between Palacios I.S.D. and Tarkington I.S.D. specifically noted the boys were to be employees of Palacios and not Tarkington, this is not the deciding factor. Clearly, Tarkington I.S.D. had the right of control. *See Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992).

While the majority notes that Tarkington's "employee *Roberts* did not bring the privately-owned vehicle into service or action, did not employ it for or apply it to a given purpose and did not perform a practical work with it", the majority does not hold that the truck was not being used for the practical work of the school district. Nor can they, because it unquestionably was. Nor is there a requirement that the vehicle in question be a school vehicle, only that a school employee "used" or "operated" the vehicle. *LeLeaux v. Hamshire Fannett Indep. School Dist.*, 835 S.W.2d 49, 51 (Tex.1992). "Operation" refers to "a doing or performing of a practical work," and "use" means "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux*, 835 S.W.2d at 51; *see also Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex.1989).

It is the duty of this court to sustain the judgment of the trial court if it is correct on any theory of law applicable to the case. *Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas*, 516 S.W.2d 138, 142 (Tex.1974). Furthermore, a trial court cannot abuse its discretion if it reaches the right result, even for the wrong reasons. *Hawthorne v. Guenther*, 917 S.W.2d 924, 931 (Tex.App.-Beaumont 1996, writ denied). We do not know why the trial court denied the plea to the jurisdiction, but there being a correct theory of law under which the court might have, we are obliged to affirm that ruling. Because the majority fails to do so, I respectfully dissent.