COUNTY OF GALVESTON, Appellant,

v.

Ronnie D. MORGAN and Mercedes Morgan, Individually and as Next of Friends of Bronson C. Morgan, Amanda R. Morgan and Marissa E. Morgan, Appellees.

No. B14–93–00449–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 11, 1994.

Rehearing Denied Sept. 8, 1994.

Scott Lyford, Galveston, for appellant.

John T. McDowell, Beth McCahill, Gerard J. Kimmitt, II, Houston, Norma Venso, Fred D. Raschke, Anthony P. Brown, Galveston, John Kilpatrick, Houston, for appellees.

Before SEARS, LEE and JUNELL (Sitting by Appointment), JJ.

## OPINION

SEARS, Justice.

Appellee, Ronnie Morgan, was injured when he fell from the raised bed of a dump truck positioned too close to a power line. He brought suit against Galveston County under the Texas Tort Claims Act. The jury found the County fifty percent negligent for the accident. The district court entered judgment for Appellees, their recovery limited by the provisions of the Texas Tort Claims Act. Appellant brings seven point of error. We affirm.

In March of 1987, Galveston County Road Department crews were helping repair road damage caused by Superior Oil Company. The gypsum used to resurface the road was provided by Mobil Mining and Minerals Company, in trucks selected by Mobil. Mobil hired Joe Brown Trucking to deliver the material. Joe Brown Trucking had a contract with Obaugh Trucking, Morgan's employer, to provide the trucks and drivers. The truck used for this kind of work was a tractor-trailer rig with a dump bed over thirty-seven feet long. A hydraulic ram raised

the dump bed in stages, so that as the truck slowly moved forward, the gypsum fell from the bed and was spread out evenly on the road. Galveston County supervised the job and provided front and rear spotters who signaled the truck drivers when to move forward and when to stop. Spotters are necessary because a dump truck driver can not see what is above him. Part of the spotters job was to watch for overhead obstructions, such as power lines, and to stop the trailer from getting too close to such dangers.

A trailer operated by Ronnie English, Morgan's co-worker, was approaching a hot 7200 volt power line. The County's front spotter directed English to move his truck too close to the power line. The top of the bed was within twenty-two inches of the line. The unloading process stopped, and the rear spotter signaled for a bulldozer to move the pile of gypsum from behind the trailer. When a trailer gets too close to a power line, such that it can not be lowered without touching the wire, the procedure is to move the material from behind the trailer, back up the trailer, and then lower the bed. Morgan's truck was the next in line, waiting to unload. He came over to see whether English's truck could be safely lowered without backing up the trailer.

Morgan climbed the trailer to gauge the distance from the bed to the power line and determine whether the bed would strike the wire. He placed his feet on a metal bar, and held onto the tarped top edge of the trailer. He was about "the third rib in the trailer from the nose," about six to eight feet below the top, when he was knocked to the ground. The next thing he recalled was waking up in the hospital. Morgan had received an electric shock. The plaintiffs and defendants presented conflicting testimony over the cause of Morgan's injuries. The plaintiffs contended that Morgan was injured when the power line touched the truck, and the electricity "shocked" Morgan off the trailer. The defendants contended that the wire never touched the truck, and that Morgan negligently came in direct contact with the line.

The plaintiffs presented medical testimony that Morgan's injuries were not consistent with someone who had come in direct contact with a power line, but were consistent with contact through insulating material. The electric shock caused entry and exit wounds on Morgan's hand and feet which were consistent with the plaintiffs' theory. Further, English testified that there was a mark on the truck, which was caused by the wire coming in direct contact with the trailer.

Joe Gonzales, a line foreman from HL & P, testified that the wire could not have touched the truck "due to the twenty-two inch" distance between the hot line and the trailer. He testified that Morgan had to touch the wire to receive the shock. Gonzales admitted, however, that coming in direct contact with a 7200 volt power line would do "pretty good damage" to an individual. However, the majority of Morgan's injuries were suffered as a result of his fall from the truck, not from the shock. The jury found Morgan and the County equally negligent.

■ In its first and second points of error, Appellant contends that there is no evidence, or in the alternative factually insufficient evidence, to support a finding of proximate cause. Appellant makes two claims: first, that the evidence is insufficient to support a finding that the wire touched the truck or the truck touched the wire; and second, even if they did touch, it was not foreseeable that someone would climb the truck and be shocked.

■ In reviewing a no evidence point, this Court·will consider only the evidence and inferences which support the jury's finding, and will disregard all evidence to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). In reviewing a factual insufficiency point, this Court must review the entire record, and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). This Court is not called upon to summarily disregard evidence or to substitute our opinion for that of the fact finders. *Loftin v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). The jury, as fact finder, was the sole judge of each witness' credibility and the weight to be

given his testimony. *Winfield v. Renfro*, 821 S.W.2d 640, 645 (Tex.App.—Houston [1st Dist.] 1991, writ denied). The jury was free to believe or disbelieve all or any part of any witness' testimony. *Miller v. Kendall*, 804 S.W.2d 933, 939 (Tex.App.—Houston [1st Dist.] 1990, no writ).

Although Joe Gonzales testified that the wire could not have touched the truck, the jury was free to judge his credibility and believe or disbelieve his testimony. He was a foreman for HL & P, and not an accident reconstructionist. Even Mr. Gonzales admitted that direct contact with a power line would cause more severe injury to a person. The medical testimony did not support a finding of direct contact. Dr. Strickland testified that the entrance and exit wounds were consistent with "indirect contact." The truck was "grounded" due to the lower end of the raised trailer bed being in contact with the pile of gypsum behind it. Dr. Oates testified that direct contact would have caused more serious injuries. In light of the conflicting testimony, the jury was free to conclude that the truck came in contact with the wire.

■■■■■ Appellant also complains that the accident was not foreseeable. Proximate cause consists of two elements: cause in fact and foreseeability. *Travis County v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). "Cause in fact" means that without such negligence no harm would have resulted. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). "Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the danger of his acts to others. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 549–550 (Tex.1985). The injury must be of such a general character as might reasonably have been anticipated, and the injured party be so situated with relation to the wrongful act that the injury to him or one similarly situated might reasonably have been foreseen. *Id.* However, foreseeability does not require that the actor foresee the particular accident or injury which in fact occurs. *Trinity River Auth. v. Williams*, 689 S.W.2d 883, 886 (Tex. 1985). Appellant contends that although the injury may be a type which could have been reasonably anticipated, (an electrical shock),

the Appellee was not "so situated" that Appellant could have reasonably foreseen his injury. We disagree. It was the duty of the spotters to keep the trucks from contacting the overhead lines. The spotters failed to follow the proper procedures and allowed English's trailer to get too close to the "hot" line. It was common knowledge that if a trailer bed came in contact with a 7200 volt hot line, and the trailer bed was grounded, an individual touching the truck could be electrocuted. We find sufficient evidence to support a finding that the hot wire did contact the trailer. Morgan was a worker at the scene, he was on the trailer bed, and he was shocked. It does not matter that the County could not foresee the particular manner in which Morgan would come in contact with the truck. See, *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 224 (Tex.1988). The injury suffered was reasonably foreseeable. Appellant's first and second points of error are overruled.

■■■■■ In its sixth point of error, Appellant contends that the evidence is factually insufficient to support a finding that the County and Morgan were each fifty percent negligent. The County asserts that Morgan was over fifty percent negligent, thus barring a recovery under comparative negligence. See, TEX.CIV.PRAC. & REM.CODE ANN. § 33.-001(a) (Vernon Supp.1994). Appellant claims that although the County may have created a risk, it was a risk which Morgan could have easily avoided. Appellant seems to be arguing the old law of "last clear chance," "discovered peril," or "assumption of the risk." Such doctrines have been subsumed into the law of comparative negligence. See, *Exxon Corp. v. Tidwell*, 816 S.W.2d 455 (Tex.App.—Dallas 1991), *reversed on other grounds*, 867 S.W.2d 19 (Tex.1993); *French v. Grigsby*, 571 S.W.2d 867 (Tex.1978). The existence of, and amount of, comparative negligence involved in a case is a question for the jury. *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 224 (Tex.1988). The jury considered comparative negligence in regard to Appellant's claim that Morgan's injuries were proximately caused by his irrational decision to climb the trailer bed, or by directly touching the hot line. Reasonable minds could have differed over

the degree of negligence to assign to each party. The evidence is sufficient to support a fifty-fifty verdict. Appellant's sixth point of error is overruled.

In its fifth point of error, Appellant contends that the district court erred in holding that the "spotters" would be personally liable to the Appellees. The Texas Tort Claims Act waives governmental immunity for injuries arising from the use or operation of a motor driven vehicle only *if the governmental employee would be liable for the actions under Texas law.* TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(1)(A) & (B) (Vernon 1986). This provision provides that the government's immunity is not waived if the governmental employee is shielded from liability through statutory or common law immunity. *City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993); *Harris County v. DeWitt,* No. A14–92–01306–CV, 1993 WL 406752 (Tex.App.—Houston [14th Dist.] May 19, 1994, n.w.h.); *City of Houston v. Newsom,* 858 S.W.2d 14 (Tex.App.—Houston [14th Dist.] 1993, no writ). In this case, the County did not allege individual immunity on behalf of the spotters. Instead, the County claimed that the spotters would not be liable because their action of allowing the trailer to get too close to the power line was not a proximate cause of the accident. This Court has already found that there was sufficient evidence to support the findings of proximate cause and comparative negligence. Appellant's sixth point of error is overruled.

In its third and fourth points of error, Appellant contends there is no evidence, or in the alternative factually insufficient evidence, to support a finding that the accident arose from a county employee's use or operation of a motor .driven vehicle. Appellant contends that the trailer was not a county truck, the driver was not a county employee, and the vehicle was not "in motion" at the time the accident occurred.

A governmental unit in this state is liable for:

property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury or death arises from the operation or use of a motor-driven vehicle or motor driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.-021(1)(A) & (B) (Vernon 1986). There is no requirement that the vehicle in question be a county vehicle, only that a county employee "used" or "operated" the vehicle. *LeLeaux v. Hamshire–Fannett Indep. School Dist.,* 835 S.W.2d 49, 51 (Tex.1992). "Operation" refers to "a doing or performing of a practical work," and "use" means "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux* at 51. The spotters in question were county employees. They were a necessary part of the job. The spotters told the truck driver when to move forward, how far to move, when to raise his bed, how far to raise it, when to lower his bed, and when to stop. The movement of the truck and the laying of the gypsum was within the spotters' sole discretion. If a driver moved his truck contrary to the spotters' direction, he could be fired. Although the spotters were not the drivers of the trucks, the spotters "used or operated" the trucks by exercising complete control over their "use or operation."

Appellant maintains that even if the spotters were negligent in the manner in which they "used or operated" the vehicle, the injury did not occur when the vehicle was "in use or in operation." Appellant relies heavily upon *LeLeaux v. Hamshire–Fannett Indep. School Dist.,* 835 S.W.2d 49, 51 (Tex. 1992) and *Keetch v. Kroger Co.,* 845 S.W.2d 262 (Tex.1992).

In *LeLeaux,* a young girl hit her head on the top of a school bus door frame. The bus was parked, the motor was off, the bus was empty and the bus driver was not present when the accident occurred. No school related business was being performed or put into service when the young girl was injured. The Supreme Court held that the injury did not arise out of the "use or operation" of a

motor driven vehicle, and that the school bus was simply the "setting" for the accident.

In *Keetch,* a woman was injured when she slipped and fell in a grocery store. A store employee had sprayed some "Green Glo" on the floor, and had failed to clean it up. The trial court refused to submit an issue to the jury on negligent activity, and submitted instead a charge only on premises defect. Keetch argued that the trial court erred in not submitting her negligent activity theory. The Supreme Court held that Keetch was properly denied the charge, because she was injured by the condition of the floor due to the spraying of the Green Glo, and not the employee's activity of spraying Green Glo on the floor.

Appellant in this case argues that Morgan was not injured by the spotters' use or operation of the trailer, but instead was injured by a condition created by the spotters' use or operation of the trailer. The County notes that the truck was no longer dumping gypsum and was not moving when Morgan climbed the trailer. Although the truck was not in motion when Morgan climbed the trailer, the vehicle was still "in use." The county spotters had called for a bulldozer to clear out the gypsum that had been dropped in order to allow the vehicle to back up and continue the process of depositing gypsum on the road. The operation did not stop. The vehicle was still under the spotters' control. We hold there was sufficient evidence for a jury to conclude that the injury arose out of a county employee's use or operation of a motor vehicle. Appellant's third and fourth points of error are overruled.

■ In its seventh and final point of error, Appellant contends that the trial court erred in denying its requested jury instruction. Appellant requested that the following question and instruction be submitted:

Did the negligence, if any, of Galveston County proximately cause the occurrence in question; and did the injuries in question, if any, arise from the operation or use of a motor-driven vehicle by an employee of Galveston County?
Answer "Yes" or "No".
Answer _____ .

In considering the negligence, if any, of Galveston County, you may consider only whether its spotters failed to provide to the driver of the truck involved in the accident assistance in maintaining the truck at a safe distance from high voltage power lines, and whether that failure was negligence, and you may not consider any other acts by any other person.

The trial court submitted the following question and instruction:

Did the negligence, if any, of Galveston County proximately cause the occurrence in question; and did the injuries in question, if any, arise from the operation or use of a motor-driven vehicle by an employee of Galveston County?
As used herein:
"Operation" refers to "a doing or performing of a practical work"; and
"use" means "to put or bring into action or service; to employ for or apply to a given purpose."
Answer "Yes" or "No".
Answer _____

Appellant claims that the failure of the court to give the requested instruction meant that "the jury did not have to find: 1) that the specific act pleaded was negligence; and 2) the required connection between that act and the use or operation of a motor vehicle by a county employee."

■ A cause of action is to be submitted on broadform questions whenever feasible. TEX.R.CIV.P. 277; *Texas Dept. of Human Services v. E.B.,* 802 S.W.2d 647 (Tex.1990). This case was submitted under broadform, and accompanied by definitions of "use" and "operation." The question and definitions given properly limited the jury's consideration to the county's negligence in the use or operation of a motor vehicle. Appellant's expressed fear that the question allowed the jury to consider other acts of negligence is unfounded. We hold that the trial court properly submitted the case to the jury. Appellant's seventh point of error is overruled.

The judgment of the trial court is affirmed.